**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 22, 2019[*]
Decided April 23, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-3075

| | |
|---|---|
| ERIC D. CONNER,<br> *Plaintiff-Appellant,* | Appeal from the<br>United States District Court for the<br>Eastern District of Wisconsin. |
| *v.* | No. 17-CV-1387 |
| STACEY HOEM, et al.,<br> *Defendants-Appellees.* | David E. Jones,<br>*Magistrate Judge.* |

**O R D E R**

 Eric Conner, a Wisconsin inmate, sued the prison's psychological-services staff and correctional officers, contending that they violated the Eighth Amendment by depriving him of a blanket, a washcloth, soap, and dental-hygiene items while he was in clinical observation for attempted suicide. *See* 42 U.S.C. § 1983. Magistrate Judge Jones, presiding by consent, *see* 28 U.S.C. § 636(c), granted the defendants' motion for summary judgment and denied Conner's cross-motion. Because no reasonable juror

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

could infer that Conner's lack of personal-care and dental-hygiene items was sufficiently egregious to violate the Eighth Amendment or that the withholding of his blanket was reckless, we affirm the judgment.

On cross-motions for summary judgment, we construe all facts and draw all reasonable inferences in favor of Conner, the party against whom the motion was filed. *See Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). Conner has a long history of self-harm in prison, including attempts to choke himself in his cell with a noose fashioned out of towels or bedsheets. The suicide attempts prompted prison staff to place him in clinical-observation status, a nonpunitive status for an inmate in danger of harming himself that allows prison staff to monitor the inmate every 15 minutes in an observation cell. In this status the psychological services unit ("PSU") staff, in consultation with security, determine what property items are safe for an inmate to have in his cell.

On March 20, 2017, after Conner attempted to suffocate himself with a plastic bag, PSU staff placed Conner in observation status, where he remained for the next month. (He had been under observation earlier in March, too, and was released shortly before this incident.) During this month, Conner used items in his cell to prevent the staff from observing him—he covered the video camera in his cell with toilet paper and hid under his security smock. PSU staff limited Conner's property and hygiene items: he received soap five times (about a quarter-bar each time) and was offered weekly showers, but he received a washcloth only once and did not have a blanket or a bath towel for the month. Connor received Spiffies, dental cleaning wipes, whenever he requested them, but he had no toothbrush, toothpaste, or floss. Connor had cavities that later required tooth extractions.

PSU staff repeatedly visited Conner's cell and attempted to speak with him to assess the risks to his safety, but he refused to cooperate and spoke only to security officers. He complained to them multiple times that he wanted a washcloth, bath towel, a full bar of soap, and a blanket because he was cold. He also complained that he could not take a shower because he did not have access to his medicated skin lotion. Security staff referred him to PSU to request items instead. When he submitted a written request to PSU, he was told that the items were removed as a safety precaution and that he had to speak with a psychologist. When he complained to the health unit about not having skin lotion, the health staff told him that he could not have it because he used the lotion to cover the security camera in his cell and that it was a "PSU decision." But he was told that the nurses could schedule lotion applications.

After Conner left observation status, he requested information from the prison maintenance staff about the temperature in his observation cell and asked the dental staff whether the lack of a toothbrush, toothpaste, and floss caused his tooth extractions. The maintenance staff replied that the computer system showed interior temperatures between 71 and 73 degrees while he was in observation (wearing only a "security smock"). Dental staff responded that they had recommended the extractions of two teeth after Conner's January 2016 oral exam, more than a year before his time in observation status, but Conner did not request an appointment.

Conner filed this lawsuit alleging that the PSU staff members (a licensed psychologist, psychologist supervisor, and psychological associate) violated the Eighth Amendment by refusing to provide him with hygiene items. They also allegedly exposed him to "extreme cold cell temps" while denying his requests for a blanket. Conner further alleged that prison security officers assigned to monitor his observation cell ignored his complaints and requests for items. The magistrate judge concluded, however, that weekly showers and the lack of personal care and dental-hygiene items did not violate the Eighth Amendment. Further, there was no evidence from which a reasonable jury could infer that the blanket restriction was either deliberate indifference or retaliation.

On appeal Conner first contends that the infrequency of his showers violated the Eighth Amendment. He asserts now, for the first time, that he was offered just four showers from March 3 to April 20 (not March 20 to April 20), thus he did not have access to "weekly" showers. But the complaint and the parties' proposed findings of fact addressed only Conner's property restrictions between March 20 and April 20, not during his time in observation earlier in March, so we cannot consider Conner's new assertion. *See Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 946 (7th Cir. 2016). It is undisputed that Conner was offered weekly showers between March 20 and April 20. And we have said that restricting inmates to weekly showers does not violate the Eighth Amendment. *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012). Conner protests that under prison policy he should have been able to shower three times a week. But the policy he cites was not in effect at the time he was under observation; the applicable policy does not specify an inmate's shower frequency. In any case, the Constitution does not require state actors to enforce their own policies and regulations. *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002).

Conner also argues that the magistrate judge failed to consider the evidence that the opportunity to shower was not meaningful because he had just a quarter-bar of

soap, a washcloth only once, and no bath towel or skin lotion. He says that without these items, he had to endure "harsh and disconcerting shower conditions." The soap was inadequate, he had to air-dry or use his "dirty smock" to dry himself before getting a clean smock, and his skin would dry out after showering. Although these conditions made showering unpleasant, no reasonable jury could find that they were "cruel and unusual under the contemporary standard[s] of decency" or that they effectively deprived Conner of "basic human needs." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, given Conner's suicide attempts, no rational jury could find that the PSU staff acted recklessly, or worse, by restricting items that Conner could use to harm himself or hide himself from observation. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

Next, Conner contends that a factual dispute exists about whether dental wipes were an adequate alternative to toothpaste, toothbrush, and floss, and whether withholding these items caused the cavities that necessitated his tooth extractions. But the prison doctor attested that Spiffies were sufficient for cleaning Conner's teeth, and Conner has provided no evidence to dispute that conclusion. Therefore, this case is not like *Board v. Farnham*, which involved a long-term denial of all oral-hygiene products. 394 F.3d 469, 483 (7th Cir. 2005). And Conner's health records confirm that dental staff recommended extractions more than a year before his placement in observation status. Without medical evidence that the use of dental wipes in the meantime worsened his condition, a reasonable jury would be unable to find that the lack of a toothbrush and toothpaste caused the dental extractions.

Conner further argues that the magistrate judge incorrectly resolved disputed facts by finding that the PSU staff acted to ensure his safety when they disallowed a blanket for a month despite "freezing cell temperatures." He argues that the PSU staff's decision to withhold his blanket was retaliation for declining treatment and refusing to speak with them. Even if we assume that this is a protected activity, the magistrate judge did not resolve a dispute because Conner provided no evidence from which a reasonable jury could infer a retaliatory motive in the staff's blanket restriction. *See Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011); *see also* FED. R. CIV. P. 56(e). The requirement that he speak to PSU staff before receiving a blanket cannot reasonably be viewed as a reprisal for ignoring them because it is undisputed that the PSU staff had to assess Conner's mental state before approving items for his cell. Conner did not submit any evidence that undercuts this rationale.

Conner also contends that disputed facts regarding his cell temperature are material and cannot be determined at summary judgment. Conner provided a letter

from the maintenance department stating that cell temperatures were between 71 and 73 degrees and three affidavits from inmates averring that the cells were "extremely cold." Even if we conclude, as the magistrate judge did, that it is a disputed fact whether the observation cells were cold, Conner has not provided evidence from which it could be inferred that the PSU staff knew that it was too cold and disregarded a risk of serious harm. *See Farmer*, 511 U.S. at 846. It is undisputed that Conner was placed in observation status because he attempted suicide repeatedly by misusing property in his cell, including a bedsheet or a towel. The parties agree that Conner refused to allow staff to assess his risk level to determine what property he could safely have, and he continued to abuse property while under observation (putting toilet paper over a camera lens and hiding under his smock). Given this record, no reasonable jury could conclude that the blanket restriction was "blatantly inappropriate" or reckless. *See Arnett*, 658 F.3d at 751; *see also Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Finally, Conner contends that the magistrate judge erred by concluding that the security staff could not be liable because they lacked discretion to alter his property restrictions. He argues that prison policy granted PSU staff the authority to authorize property allowances "in consultation with security staff." But Conner has provided no evidence for the proposition that the security officers could have effectively overruled the psychological staff by providing him with items that they had restricted.

AFFIRMED